Francisco Ballester Acosta, demandante y apelado, *v.* Farm & Dairy Products, Inc., demandada y apelante.

Núm. 8223.—*Sometido:* Abril 4, 1941. *Resuelto:* Abril 17, 1941.

Cayetano Coll Cuchí, abogado de la apelante; *Dubón & Ochoteco* y *Otero Suro & Otero Suro,* abogados del apelado.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

En la carretera núm. 46 y en el trayecto comprendido entre el Sanatorio Insular y la urbanización Eleanor Roosevelt, el automóvil del demandante chocó con un camión de la demandada conducido por su empleado Joaquín Irizarry. A consecuencia de la colisión el demandante, que guiaba su automóvil, recibió varias lesiones, quedándole permanentemente inútil el dedo del corazón de la mano derecha y resultando su automóvil destrozado e inservible.

La prueba respecto a la causa del accidente es contradictoria. La apreció la corte inferior y dirimiendo el conflicto a favor del demandante, se expresó así:

"La corte, apreciando en conjunto toda la prueba y tomando en consideración la forma en que declararon los testigos de ambas partes, da entero crédito al testimonio del demandante y llega a la conclu-

sión de que este accidente se debió a la negligencia del chófer que conducía el vehículo de la demandada, y que el demandante no es responsable de descuido o imprudencia alguna, siendo por lo tanto la demandada responsable de los daños sufridos u ocasionados al demandante como consecuencia de dicho accidente.''

En armonía con esa conclusión, dictó sentencia condenando a la demandada a pagar al demandante la suma de $850 como indemnización total de los perjuicios por los indicados conceptos, y le condenó además al pago de las costas y a la suma de $200 para honorarios de abogado.

La apelante reconoce que la prueba es contradictoria, pero sostiene que está a su favor la preponderancia de la evidencia.

 La prueba del demandante consistió en su propia declaración, la de José Rivera Rodríguez, policía insular, la del mecánico Pascual Hernández, y en una certificación firmada por el Dr. Guillermo H. Barbosa que fué admitida sin oposición de la demandada.

Declaró el primero que marchaba a 20 ó 25 millas por hora y que a una distancia de 50 metros vió al vehículo de la demandada que venía en dirección contraria, a una velocidad que calculó de 35 millas por hora; que el demandante se echó todo lo más que le fué posible a su derecha, pero el chófer de la demandada, debido a la velocidad que traía, sin tener en cuenta que en aquel trayecto la carretera es muy estrecha y que en algunos sitios el firme se halla destruído por sus orillas, no tomó precaución alguna, dando lugar a que el eje trasero, que sobresale 3 ó 4 pulgadas del tapalodo del camión, chocase con el tapabocina de la rueda izquierda delantera del automóvil, lo que hizo que el demandante perdiese el control del guía y girando hacia su izquierda, fuera a caer a la cuneta opuesta, chocando su vehículo con el talud.

El policía Rivera Rodríguez no presenció el accidente, pero se trasladó al sitio inmediatamente después y por las huellas dejadas por uno y otro vehículo determinó que el del

demandante en el momento del impacto venía completamente por su derecha, no asegurando lo mismo con respecto al de la demandada.

El mecánico Hernández hizo igual observación, declarando además, como el demandante, sobre los daños sufridos, con respecto a lo cual no existe controversia.

La certificación del Dr. Barbosa se contrae exclusivamente a las lesiones recibidas por el demandante.

La prueba de la demandada consistió en las declaraciones del chófer, del peón que lo acompañaba, de otro empleado de la demandada que declaró haber presenciado el accidente porque a la sazón venía para su trabajo y se le dañó el carburador de su carro cerca de aquel sitio, y del testimonio de Emilio Cordero Pérez, que ninguna relación tiene con las partes. Aseguraron estos testigos que el accidente fué motivado por la excesiva velocidad a que marchaba el demandante y que el chófer de la demandada, al verlo, en previsión de un choque, detuvo la marcha y estacionó su vehículo a su derecha tanto como le fué posible, a pesar de lo cual el demandante dejó chocar el tapabocina de la rueda delantera con el eje trasero del vehículo de la demandada.

Conforme asegura la demandada, presentó ella más testigos presenciales que el demandante, pero esa sola circunstancia no implica que esté a su favor la preponderancia de la evidencia. Como dice la máxima legal, los testigos se pesan, no se cuentan, y el juez sentenciador, que vió y oyó declarar los testigos, pesó la prueba y a su juicio la balanza se inclinó del lado del demandante. El artículo 18 de la Ley de Evidencia a este efecto prescribe:

"La evidencia directa de un solo testigo que merezca entero crédito, es prueba suficiente de cualquier hecho, salvo perjurio o traición."

Además, en el caso de *Matías* v. *Schweitzer*, 55 D.P.R. 764, 770, este tribunal, refiriéndose al criterio a seguir en

apelación respecto a la apreciación de la prueba que hubiere hecho la corte sentenciadora, dijo:

"Si consideramos que era el propósito del demandante tomar el camino de su casa, para lo cual precisaba cruzar la carretera en o alrededor del sitio en que fué arrollado; si tenemos en cuenta que un automóvil conducido por la orilla de una carretera normalmente no abandona su rumbo para ocupar el margen opuesto, y por último si consideramos que a veces un viandante al enfrentarse de súbito con una situación de peligro se confunde y lejos de huir se lanza al mismo, fácil es concluir que la teoría de los demandados es más probable que la del demandante y sus testigos. Sin embargo, esta última teoría no es físicamente imposible. A veces una distracción del chófer, un desnivel en la carretera, y hasta un pequeño obstáculo sobre el cual pase una de las ruedas delanteras en momentos en que esté distraído el chófer, pueden desviar el automóvil si marcha a una gran velocidad, como iba el de los demandados según aseguraron los testigos del demandante. No siendo la versión de éste físicamente imposible, estando tal versión sostenida por la prueba del demandante, que fué creída por el juez sentenciador, quien tuvo la oportunidad de que no disponemos nosotros de observar lo gestos y vacilaciones de los testigos al contestar el interrogatorio a que fueron sometidos, y en general su conducta en la silla testifical, no debemos alterar la conclusión de la corte sentenciadora a menos que de la prueba surja que al apreciarla actuó el juez movido por pasión, prejuicio o parcialidad."

En parecidos términos se pronunció la Corte Suprema de Montana en *Wallace* v. *Wallace* (1929) 279 P. 374, 66 A.L.R. 587, 592, a saber:

"Al considerar este señalamiento de error estamos obligados por las bien establecidas reglas que a continuación se exponen, limitadoras de nuestra facultad para revisar la evidencia. Mientras tengamos el juicio por jurado y los preceptos legales que lo regulan, las cortes y los litigantes deben acatar sus decisiones respecto al peso de la prueba y a la credibilidad de los testigos; son éstas cuestiones vedadas a esta corte en apelación. (Citas.) El jurado puede creer el testimonio de un testigo y no el de otro u otros, y su decisión sobre el particular es definitiva; habiendo hablado el jurado, esta corte debe asumir que los hechos son como los establecieron los testigos creídos por él. (Citas.) La preponderancia de la prueba

puede quedar establecida por un solo testigo contra un número mayor que declare lo contrario. (Citas.)

"En su consecuencia, al existir conflicto, esta corte sólo puede revisar la prueba para determinar si hay o no en el récord cualquier evidencia sustancial que sostenga el veredicto, debiendo aceptar la prueba que fué creída, a menos que sea tan inherentemente imposible o improbable, que no merezca crédito; *y cuando el veredicto está sostenido por evidencia sustancial que desde algún punto de vista pudo ser aceptada por el jurado como digna de crédito, su veredicto nos obliga, aunque la prueba aparezca inherentemente débil.* (Citas.) (Bastardillas nuestras.)

La sentencia apelada está claramente sostenida por la prueba, la cual no es imposible ni improbable, y no habiéndose demostrado que el juez sentenciador al apreciarla actuara movido por pasión, prejuicio o parcialidad, *procede confirmar la sentencia apelada.*