ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| STEVEN ZISSIS, JAMIE ZISSIS<br><br>Apelante<br><br>v.<br><br>ANGEL L. PANTOJA RODRÍGUEZ, SECRETARIO DE JUSTICIA, ESTADO LIBRE ASOCIADO DE PUERTO RICO<br><br>Apelados | TA2025AP00481 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2025CV04046<br><br>Sobre: Injunction (Entredicho Provisional, Injunction Preliminar y Permanente), Código de Rentas Internas, Código de Rentas Internas-Impugnación de Contribuciones sobre Ingresos |

Panel integrado por su presidenta la Juez Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 12 de enero de 2026.

Comparece ante nos el señor Steven Zissis y la señora Jaime Zissis (Apelantes), por conducto de su representación legal, mediante Recurso de Apelación instado el 27 de octubre de 2025. Nos solicitan que revoquemos la sentencia emitida por el foro primario y se conceda el *Injunction*. Por su parte, el Procurador General en representación del Gobierno de Puerto Rico comparece ante nos mediante Alegato de la Parte Apelada.

Por los fundamentos que exponemos, confirmamos la Sentencia emitida por el Tribunal de Primera Instancia, debido a que no se agotaron los remedios administrativos.

**I.**

El 12 de mayo de 2025, los Apelantes presentaron una Demanda sobre Interdicto preliminar y permanente e impugnación de tasación al amparo de la Sección 6010.02(a)(10) del Código de Rentas Internas de Puerto Rico, 13 LPRA sec. 33002, en contra de Ángel L. Pantoja Rodríguez en su capacidad de Secretario de Hacienda.[1] Destacamos que dieciochos (18) días antes de la presentación de la Demanda, en específico el 24 de abril de 2025, los Apelantes presentaron una Querella en la Oficina de Apelaciones Administrativas del Departamento de Hacienda.[2] Dicha querella fue presentada para solicitar la Reconsideración de la Notificación de Error Matemático o de Transcripción.[3]

Surge de la Demanda que los Apelantes requieren que se declare nula la tasación de contribución sobre ingresos correspondiente a la Planilla de 2019, realizada por el Secretario de Hacienda el 31 de julio de 2024, mediante una Notificación de Error Matemático o de Transcripción. En dicha notificación se expuso que el Crédito por Contribuciones Foráneas en la planilla de 2019 debió ser de $376,634, en lugar de ascender a $1,639,724 según reclamado por los Apelantes.[4] El 27 de septiembre de 2024, se presentó una Petición de Reconsideración.[5] Dicha Reconsideración fue denegada por el Departamento de Hacienda el 2 de octubre de 2024.[6] Según los Apelantes el mecanismo que se debía utilizar era una Notificación

---

[1] Véase entada de SUMAC TPI núm. 1.
[2] Véase entada de SUMAC TPI núm. 1, Anejo G.
[3] *Íd.*
[4] Véase entada de SUMAC TPI núm. 1, Anejo B.
[5] Véase entada de SUMAC TPI núm. 1, Anejo C.
[6] Véase entada de SUMAC TPI núm. 1, Anejo D.

de deficiencias para tasar las contribuciones sobre ingresos adicionales a los contribuyentes para el año contributivo 2019.

De igual modo, el 12 de mayo de 2025, los Apelantes presentaron una Moción en Apoyo a la petición de *injunction* preliminar con el propósito de que se le ordene al Departamento de Hacienda "1. [n]o poder realizar acción de cobro alguna en cuanto a la deuda correspondiente a la Planilla de 2019, según notificada mediante la Notificación de Error Matemático o de Transcripción y mediante la Notificación de Cobro de 7 de enero de 2025; [y] [p]aralizar los procedimientos administrativos relacionados con la Querella presentada ante la Secretaria de Procedimiento Adjudicativo de Hacienda hasta que este Honorable Tribunal emita una determinación final y firme (. . .).[7]

El 15 de mayo de 2025, se diligenciaron los emplazamiento y la citación para la vista de concesión de interdicto al Departamento de Hacienda y Departamento de Justicia (Apelados).[8]

El 20 de mayo de 2025, los Apelados presentaron una Moción de Desestimación, al amparo de la Regla 10.2 de Procedimiento Civil, 32A LPRA Ap. V, en la cual señalan que hay falta de jurisdicción sobre la materia y se deja de exponer una reclamación que justifique la concesión de un remedio.[9] Además, resaltan que aplica la doctrina de agotamientos de remedios administrativos debido a que los Apelantes "voluntariamente y previo a acudir a este foro judicial, se sometió a la jurisdicción del foro administrativo mediante la presentación de una *Querella*".[10]

---

[7] Véase entrada de SUMAC TPI núm. 3.
[8] Véase entrada de SUMAC TPI núm. 11.
[9] Véase entrada de SUMAC TPI núm. 17. Como parte del Anejo IV, se adjuntó una Certificación de Deuda la cual establece que "[l]a deuda arriba descrita se encuentra bajo revisión, por lo que tiene detenida toda gestión de cobro". *Íd*.
[10] *Íd*., pág. 14.

El 5 de junio de 2025, los Apelantes presentaron su Oposición a Moción de Desestimación.[11]  En lo que respecta a la doctrina de agotamiento de remedios administrativos establecen que se debe ignorar este debido a que el proceso que se lleva ante el Departamento de Hacienda es nulo. Por lo cual, la agencia de gobierno no tiene jurisdicción y el proceso puede ser preterido.[12]  En específico exponen que la "nulidad de la tasación efectuada por Hacienda, en virtud de haber obviado el procedimiento de notificación de deficiencia establecido en el Código para estos propósitos, el procedimiento administrativo encausado mediante 'error matemático o de transcripción' ante Hacienda carece de validez y, por tanto, es nulo".[13] Asimismo, señalan que "la única razón por la cual los Contribuyentes presentaron una querella ante Hacienda fue para evitar argumentos de que se cruzaron de brazos y ante la incertidumbre de quedarse sin remedio alguno".[14]

El 23 de julio de 2025, el TPI declaro "Ha Lugar" la Moción de desestimación presentada por los Apelados, dado que no se agotaron los procedimientos administrativos iniciados por los Apelantes.[15] Parte del razonamiento detrás de la sentencia del TPI gira en torno a que "[u]n examen de dicha querella refleja que esencialmente se plantea la misma controversia de violación de derechos estatuarios, notificación de error matemático vs. notificación de deficiencia, violación del debido proceso de ley, defectos de notificación, errores de derecho, fundamentos, etc. que en el caso de autos".[16]

---

[11] Véase entrada de SUMAC TPI núm. 25.
[12] *Íd*.
[13] *Íd.*
[14] *Íd.*
[15] Véase entrada de SUMAC TPI núm. 35.
[16] *Íd.,* pág*. 13.*

El 7 de agosto de 2025, los Apelantes presentaron una Moción de Reconsideración.[17] Posteriormente, el 27 de agosto de 2025, los Apelados presentaron su Oposición a Moción de Reconsideración.[18] El 29 de agosto de 2025, el TPI declaró "No Ha Lugar" la Moción de Reconsideración.

Inconforme con esta determinación, el 27 de octubre de 2025, los Apelantes presentaron su escrito de Apelación en el cual realizaron los siguientes señalamiento de errores:

> PRIMER SENALAMIENTO DE ERROR: Erró el TPI al dictar Sentencia desestimando la demanda de epígrafe sin haber considerado la aplicación de la Sección 6010.02(a)(10) del Código, la cual autoriza la radicación de una petición de *injunction* ante el TPI para lograr la anulación de una tasación ilegal de Hacienda, sin necesidad de tener que requerir previamente ante a Hacienda a agotar procedimiento administrativo alguno.

> SEGUNDO SENALAMIENTO DE ERROR: Erró el TPI al dictar Sentencia desestimando la Demanda de epígrafe basado en la dotrina de agotamiento de procedimiento administrativo, a pesar de que en el caso de autos aplica la excepción de falta de jurisdicción, considerando que Hacienda no tiene autoridad para llevar a cabo el procedimiento contra los Contribuyentes en vista de que utilizó el procedimiento incorrecto para tasarle contribuciones adicionales a los Contribuyentes.

## II.

### A. Código de Rentas Internas de Puerto Rico

La Ley Núm. 1 – 2011 conocida como el Código de Rentas Internas de Puerto Rico de 2011 rige el sistema contributivo de Puerto Rico. Dicho código establece los mecanismos por el cual se puede impugnar ciertos procedimientos administrativos.

El antes mencionado estatuto en la sección 6010.02 (g)(3)(B) contempla seis (6) instancias en la cual se considerará un error matemático o de transcripción, es decir cuando haya:

i.   Un error de suma, resta, multiplicación o división que aparezca en cualquier planilla,

---

[17] Véase entrada de SUMAC TPI núm. 36.
[18] Véase entrada de SUMAC TPI núm. 38.

ii. El uso incorrecto de cualquier tabla incluida en el Código respecto a cualquier planilla si dicho uso incorrecto es aparente ante la existencia de cualquier otra información en la planilla,

iii. Una entrada en una planilla de una partida que es inconsistente con otra entrada de la misma partida o con otra partida en dicha planilla u otra planilla radicada en el Departamento.

iv. Cualquier omisión de información que se requiere sea incluida en la planilla para evidenciar una entrada en la planilla,

v. Una entrada en una planilla de una deducción o crédito en una cantidad que exceda el límite estatuario impuesto por el Código si tal limite es expresado

I. Como una cantidad monetaria especifica o

II. Como un porcentaje, proporción o fracción si las partidas que entran en la aplicación de dicho limite aparecen en dicha planilla, y

vi. La omisión en la planilla del número de cuenta o número de seguro social correcto (…). 13 LPRA sec. 33002

La sección previamente mencionada en el inciso (g)(1) establece que:

> Tasación atribuible a error matemático o de transcripción o a un Ajuste de Planilla. — Si el contribuyente fuere notificado de que, debido a un error matemático o de transcripción en la planilla, o declaración de impuesto o a un Ajuste de Planilla, adeuda una contribución en exceso de aquella declarada en la planilla o declaración de impuesto y de que una tasación de la contribución se ha hecho o será hecha sobre la base de lo que habría sido el monto correcto de la contribución, a no ser por el error matemático o de transcripción o del Ajuste de Planilla, tal notificación no será considerada como una notificación de deficiencia bajo el apartado (a) de esta Sección o el apartado (f) anterior; y el contribuyente no tendrá derecho a radicar un recurso ante el Tribunal de Primera Instancia basado en dicha notificación, ni dicha tasación o cobro serán prohibidos por las disposiciones del apartado (a) de esta Sección. Toda notificación bajo este párrafo expresará la naturaleza del alegado error o ajuste y la explicación del mismo. 13 LPRA sec. 33002

Por consiguiente, si el Departamento de Hacienda determina que hubo un error matemático que se pueda categorizar bajo una de las seis (6) instancias según enumeradas en la sección 6010.02 (g)(3)(B) el contribuyente no tendrá derecho a presentar un recuro ante el TPI.

Por otro lado, la Sección 6010.01 inciso (b), 13 LPRA sec. 33001, define la deficiencia como:

[E]l monto por el cual la contribución impuesta por cualquier Subtitulo de este Código sobrepase el exceso de —

(1) la suma de (A) la cantidad declarada como contribución por el contribuyente en su planilla o en su declaración e impuestos si se rindió una planilla o declaración de impuestos por el contribuyente y se declaró en la misma por el contribuyente alguna cantidad como contribución o impuesto, mas (B) las cantidades previamente tasadas, o cobradas sin tasación, como deficiencia, sobre —

(2) el monto de las reducciones hechas, según estas se definen en el apartado (c)(2).

Por último, la sección 6010.02 (a)(10) expone que:

No se hará la tasación de una deficiencia con respecto a la contribución impuesta por cualquier Subtítulo de este Código, ni se comenzará o tramitará procedimiento de apremio o procedimiento en corte para su cobro, antes de que la notificación de la determinación final a que se refiere el párrafo (1) haya sido enviada por correo certificado al contribuyente, ni hasta la expiración del término concedido por este Subtítulo al contribuyente para recurrir ante el Tribunal de Primera Instancia contra dicha determinación final, ni, si se hubiere recurrido ante el Tribunal de Primera Instancia, hasta que la sentencia del Tribunal sea firme. No obstante[,] las disposiciones de la Sección 6080.10(a) de este Subtítulo, dicha tasación o el comienzo de dicho procedimiento de apremio o procedimiento en corte durante el período en que aquí se prohíben, podrán ser impedidos o anulados mediante procedimiento judicial. 13 LPRA sec. 33002.

El Tribunal Supremo de Puerto Rico en el caso de *Fuentes v. Secretario de Hacienda*, 80 DPR 203 (1958) interpreto la antes mencionada sección correspondiente a la Ley Núm. 9 de 8 de octubre de 1954 conocida como la Ley de Contribuciones Sobre Ingresos. El Tribunal Supremo expuso que "la anterior disposición claramente abre al contribuyente las puertas de los tribunales, independientemente de la existencia de otro remedio, *para impedir mediante ordenes de injuction la tasación y cobro de una contribución en las circunstancias allí expuestas*". *Íd*., pág. 203.

Destacamos que en el caso antes mencionado no surge de la Sentencia que se haya instado una acción previa mediante una querella en el Departamento de Hacienda. Asimismo, el caso versa sobre la falta de una notificación adecuada ante una imposición de deficiencia contributiva. *Íd*.

### B. Doctrina de Agotamiento de Remedios Administrativo

La Ley Núm. 38 – 2017 conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico no contempla ninguna definición concreta sobre la Doctrina de Agotamientos de Remedios Administrativos. J. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, 5.ª ed. rev. San Juan, Ed. Situm, 2023, pág. 73. Sin embargo, mediante la jurisprudencia nuestro Tribunal Supremo ha expuesto que la doctrina de agotamiento de remedios administrativos "es una norma de autolimitación judicial de carácter fundamentalmente practico". *Procuradora Paciente v. MCS*, 163 DPR 21, 35 (2004).

El Prof. Echevarría Vargas señala que la doctrina de agotamiento de remedios administrativos es de aplicación:

> [E]n casos en los cuales una parte que insto o tiene instada alguna causa de acción ante una agencia administrativa, recurre ante algún tribunal sin antes haber completado todo el tramite administrativo disponible. Es decir, la norma se invoca usualmente para cuestionar la acción judicial de un litigante que acudió originalmente a un procedimiento administrativo, o era parte de éste, y que recurrió luego al foro judicial, aunque aun tenia remedios administrativos disponibles. Hernández Vargas, *op cit*., pág. 74.

La sec. 4.3 de la Ley Núm. 38 2017 expone cuales son las excepciones por los cuales se puede preterir los canales administrativos y acudir al foro judicial. En específico dicha sección establece que:

> El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho

remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o *cuando sea un caso claro de falta de jurisdicción de la agencia*, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa. 3 LPRA sec. 9673. (Énfasis suplido).

En lo que respecta a la excepción por falta de jurisdicción de una agencia, nuestro máximo foro ha señalado que la doctrina de agotamientos de remedios administrativo parte del postulado que si la agencia administrativa no tiene jurisdicción su actuación es *ultra vires (fuera de la facultad)*. *OAM v. Abarca Health*, 2025 TSPR 23, 215 DPR __ (2025) citando a *J. Exam. Tec. Méd. v. Elías et al*. 144 DPR 483 (1997).  Por lo cual, de haber una clara falta de jurisdicción, el asunto le compete al foro judicial. *Íd*. No obstante, cuando la cuestión jurisdiccional no es evidente, es necesario exigir agotar los remedios administrativos. *Íd.* Asimismo, se ha expuesto que "no toda alegación de ausencia de jurisdicción va a tener el efecto de liberar a la parte de culminar sus gestiones en la agencia. Cualquier otra interpretación tendría el efecto de eliminar *de facto* la doctrina de agotamiento de remedios administrativos". *Colon v. Méndez*, 130 DPR 433, 445 (1992).

En *Vélez Ramírez v. Romero Barceló*, 112 DPR 716, 723 (1982) delimito los criterios por el cual el Tribunal se guiará para ver si aplica o no la doctrina de agotamiento de remedios administrativos ante el planteamiento de la excepción de falta de jurisdicción, estos son los siguientes:

 (1.) el riesgo que se ocasione un daño irreparable al afectado si el tribunal pospone su intervención dejando que prosigan los procedimientos, (2) el grado de claridad con que surja la ausencia o presencia de

jurisdicción y (3) la pericia que tenga la agencia para dilucidar las cuestiones pertinentes a su jurisdicción.

## III.

Los errores alegados se atenderán conjuntamente toda vez que están interrelacionados.

El 24 de abril de 2025, los Apelantes presentaron una Querella en la Oficina de Apelaciones Administrativas del Departamento de Hacienda con el propósito de solicitar la Reconsideración de la Notificación de Error Matemático o de Transcripción. Surge del Alegato de la Oficina del Procurador General, presentado el 1 de diciembre de 2025, que dicha Querella se encuentra todavía bajo la consideración de la Oficina de Apelaciones Administrativas del Departamento de Hacienda. No obstante, dieciocho (18) días después de haber presentado su querella, es decir el 12 de mayo de 2025, los Apelantes presentaron una demanda de Interdicto Preliminar y Permanente e impugnación de tasación al amparo de la Sección 6010.02(a)(10) del Código de Rentas Internas de Puerto Rico. Por lo cual, quisieron llevar el mismo pleito simultáneamente en diferentes foros.

Bajo dicha sección se establece que, de llevarse a cabo una notificación de deficiencia y se imponga una tasación incorrecta se podrá acudir a anular está bajo un procedimiento judicial. Por el contrario, si el Departamento de Hacienda realiza un notificación de error matemático el Código de Rentas Internas le cierra las puertas del tribunal al contribuyente. No obstante, se puede presentar una querella ante la misma agencia para que reconsidere. Como los Apelante también realizaron.

En su Recurso de Apelación los Apelantes exponen que la Sección 6010.02(a)(10) del Código de Rentas Internas de Puerto

Rico "no condiciona el que se pueda instar el referido 'procedimiento judicial' a que el contribuyente haya hecho algún tipo de gestión previa ante Hacienda". Precisamente no es el estatuto quien dispone eso si no la doctrina de agotamientos de remedios administrativos. Destacamos, que dicha figura fue creada jurisprudencialmente. Por lo cual, seria sumamente raro que se vea dicha figura incorporada en un estatuto. Los Apelantes tenían que saber que una vez iniciada su acción en el Departamento de Hacienda tienen que terminar todos los trámites en la agencia y de estar inconforme con su determinación acudir mediante una revisión judicial ante esta curia.

Los Apelantes también citan el caso de *Fuentes v. Secretario de Hacienda* en el cual citan que la "disposición claramente abre al contribuyente las puerta de los tribunales, independientemente de la existencia de otro remedio, para impedir mediante órdenes de *injunction* la tasación y cobro de una contribución en las circunstancias allí expuestas". Como señala en su alegato el Procurador General el caso de Fuentes es distinguible al de autos. En el de Fuentes dicho caso se limita a una impugnación de una notificación de deficiencia contributiva y no una de error matemático. Asimismo, en dicho caso tampoco se inicia una gestión administrativa en el Departamento de Hacienda y luego se acude al foro judicial a litigar el mismo asunto simultáneamente. Por lo tanto, en el caso tampoco se contemplaba extender el *injunction* como lo quieren los Apelantes para paralizar la querella instada por ellos mismo ante el Departamento de Hacienda.

Los Apelantes en su escrito justifican el haber presentado una querella en el foro administrativo antes que su causa de acción en el foro judicial para "anticipar" una defensa. Debido a que en el caso de *Rodríguez Feo v. Flores Galarza* KLAN200500618

resuelto por el Tribunal de Apelaciones, el Departamento de Hacienda levantó como defensa la doctrina de los actos propios. No obstante, los Apelantes tenían que anticipar también que, de haber iniciado la Querella en el Departamento de Hacienda iba a aplicar la doctrina de agotar los remedios administrativos y que Hacienda ostentaría jurisdicción.

Como señalamos anteriormente, la falta de jurisdicción es una excepción a la doctrina de agotamientos de remedios administrativos. El Tribunal Supremo ha expuesto cuales son los criterios para ver si aplican dicha excepción. A continuación, esbozaremos estos y los aplicaremos al caso de marras. El primero es el riesgo que ocasione un daño irreparable al afectado si el tribunal pospone su intervención dejando que prosigan los procedimientos. Del Tribunal no intervenir los apelantes no tendrán ningún daño irreparable debido a que la querella instada ante la Oficina de Apelaciones Administrativas del Departamento de Hacienda fue con el propósito de que Hacienda *reconsidere* la Notificación de Error Matemático. (Énfasis nuestro). Por consiguiente, los Apelantes tienen la oportunidad de que el Departamento de Hacienda cambie su determinación. El segundo elemento es el grado de claridad que surja de la ausencia o presencia de jurisdicción. Del Código de Rentas Internas se desprende claramente que, como parte de las facultades del Secretario de Hacienda este puede llevar a cabo los exámenes de libros sin limitarse a notificaciones de error matemáticos, notificaciones de planilla con omisión de información, entre otros. 13 LPRA sec. 33202. Por último, la pericia que tenga la agencia para dilucidar las cuestiones pertinentes a la jurisdicción. El Departamento de Hacienda es la agencia encargada de administrar y hacer cumplir el Código de Rentas Internas. Por lo

cual, dicha agencia es la entidad responsable de recaudar los impuestos establecido en el Código de Rentas Internas, administrar sus disposiciones y fiscalizar a los contribuyentes. El Departamento de Hacienda es una de las agencias gubernamentales que más claro tiene por ley cuales son los límites que tiene en torno a su jurisdicción. No existe otra agencia en el gobierno de Puerto Rico que pueda incursionar en materia contributiva y verificar los excesos de créditos atribuibles en las planillas.

En conclusión, no están presentes las condiciones necesarias que permiten preterir el agotamiento de remedios administrativos ante un reclamo de falta de jurisdicción. Por consiguiente, tampoco *procede el injunction*.

## IV.

En atención a todos los fundamentos expresados anteriormente, se confirma la determinación del Tribunal de Primera Instancia debido a que no se agotaron los remedios administrativos ante el Departamento de Hacienda.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones